UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS RALPH JACKSON,

                Plaintiff,                Case No. 1:11-cv-989

v.                                          Honorable Janet T. Neff

JACKLYNN UNRUH et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated by the Michigan Department of Corrections (MDOC) and is housed at the Saginaw Correctional Facility, though the events giving rise to his complaint occurred while he was housed at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Plaintiff sues the following employees of DRF: Librarian Technician Jacklynn Unruh, Librarian C. Land, Administrative Deputy Warden (ADW) T. L. Fuqua and Deputy Warden Tony Trierweiler. He also sues the following employees of the MDOC: Grievance Specialist Veda Dove, R.D. Russell and former Director Patricia Caruso. Finally, he sues Keith Barber at the Office of Legislative Corrections Ombudsman.

Plaintiff alleges that on Wednesday, July 23, 2008, he gave Defendant Unruh a 169-page motion for relief from judgment attacking his criminal conviction. He requested that she make six copies of his documents and he gave her a Legal Photocopy Disbursement Authorization form indicating that he had been approved for a loan to make copies. Plaintiff notified Unruh that the filing deadline for his motion was Friday, July 25, 2008, and he asked if the copies could be made the same day. She replied that she could have the copies available by the next day, Thursday, July 24, at the earliest.

On Friday morning, at 7:50 am, Defendant Unruh gave Plaintiff six incomplete copies of his motion. Unruh allegedly changed the disbursement authorization form to indicate that only 127 pages of the 169-page motion could be copied. Unruh told Plaintiff that he could have reproduced the other pages himself and that he did not have enough money to make copies of all of the pages. Plaintiff contends that Unruh's actions caused him to miss the filing deadline for his motion.

Plaintiff alleges, on August 17, 2009, that he "discovered" that his "access to the courts issue was a federal violation and was grievable." (Compl. ¶ 5, docket #1, Page ID#8.) The next day, Plaintiff wrote a grievance regarding the issue. Librarian Land responded to the grievance at step I, asserting that she had reviewed the copy logs and could not find a record of any copy requests submitted by Plaintiff since July 1, 2009. ADW Fuqua reviewed Land's response to the grievance.

Plaintiff filed a step II grievance appeal asserting that Land should have looked at the logs from 2008, not 2009. Grievance Coordinator Duncan acknowledged receipt of the step II grievance. Deputy Warden Trierweiler responded to the step II grievance. According to Trierweiler, prison staff thought that the 2008 date in Plaintiff's initial grievance was a typographical error, and assumed that Plaintiff was referring to an incident that had occurred in 2009. Because the incident had, in fact, occurred in 2008, however, Plaintiff's grievance was untimely. Moreover, Plaintiff had failed to provide an explanation for submitting his grievance over a year late.

Plaintiff submitted a step III grievance appeal to the office of Director Caruso asserting that MDOC policies do not set a time limit on the discovery of grievable issues. On April 23, 2010, Grievance Specialists Dove and Russell denied Plaintiff's grievance at step III. In May 2010, Plaintiff sent a letter regarding his grievances to the Office of Legislative Corrections Ombudsman. The Ombudsman declined to investigate his complaint.

Plaintiff claims that Defendant Unruh denied his right of access to the Courts, and the remaining Defendants failed to sufficiently investigate or respond to his grievances. Plaintiff

seeks injunctive relief and compensatory damages, as well as reimbursement of his court costs, filing fees and attorney's fees.[1]

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

---

[1] Plaintiff is proceeding *pro se* in this action.

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Unruh

Plaintiff contends that Defendant Unruh interfered with his constitutional right of access to the courts when she failed to provide him with complete copies of his legal documents in time for him to meet a court-imposed deadline. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. First, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials

have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Id.* at 351-53. Second, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Assuming Plaintiff has alleged actual injury and assuming that his motion for relief from judgment was not frivolous, Plaintiff cannot show that Defendant's conduct violated his rights under the First Amendment.

In *Dorn v. Lafler*, 601 F.3d 439 (6th Cir. 2010), a prisoner claimed that his First Amendment right to access to the courts was violated when a delay in mailing his appeal papers resulted in the dismissal of his appeal of right by the Michigan Court of Appeals. The Sixth Circuit held that prisons have an obligation to "timely" mail court documents when prisoners have been "diligent and punctual" in submitting them to prison officials. *Id.* at 444. The prisoner in *Dorn* gave his appeal papers to prison officials seven days before they had to be received by the Michigan Court of Appeals. The court concluded that seven days was a reasonable amount of time for prison officials to process and mail the documents so that they could be received by the court before the filing deadline.[2] In contrast, Plaintiff did not give Defendant Unruh a reasonable amount of time to

---

[2]Michigan does not follow the "prison mailbox rule"; the date of filing is the date of receipt by the court clerk. MICH. CT. R. 7.202(2); *see Dorn*, 601 F.3d at 444.

make the copies in order for him to meet the court deadline. He gave his documents to Unruh a mere two days before the court deadline, and they still needed to be copied and then submitted to prison officials for processing and mailing to the court. It was reasonable for Unruh to need at least a day to make six copies of a 169-page document, but even if she had returned them to Plaintiff immediately, it is unlikely that Plaintiff would have been able to mail them to the court in time to meet the deadline. Thus, to the extent Unruh was responsible for a delay in the filing of Plaintiff's documents, she was not responsible for Plaintiff's injury. Therefore, Plaintiff does not state a claim against Unruh.

### B. Defendants Land, Fuqua, Trierweiler, Dove, Russell, Caruso and Barber

Plaintiff alleges that Defendants Land, Fuqua, Trierweiler, Dove, Russell, Caruso, and Barber (hereinafter, the "Remaining Defendants") violated his rights when they denied or failed to investigate his grievances regarding Unruh's actions. In effect, Plaintiff asserts that he was denied his right to due process because the Remaining Defendants did not provide an effective procedure to remedy his grievance. Plaintiff does not state a due-process claim, however, because the Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants'

conduct did not deprive him of due process. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Moreover, to the extent Plaintiff alleges that Defendants did not follow prison policies regarding the grievance procedure, he does not state a § 1983 claim. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

In addition, Plaintiff does not state an access-to-courts claim against the Remaining Defendants because he does not allege that they were personally involved in any conduct related to the filing of Plaintiff's motion for relief from judgment. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532

F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that the Remaining Defendants engaged in any active unconstitutional behavior. Accordingly, he fails to state a § 1983 claim against them.

Finally, to the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction over such claims. *See* 18 U.S.C. § 1367(c)(3). The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's § 1983 action will be dismissed with prejudice because it fails to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Furthermore, the Court declines to exercise jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated: __November 8, 2011__          /s/ Janet T. Neff
                                               Janet T. Neff
                                               United States District Judge